# IN UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA
## CIVIL DIVISION

| | |
|---|---|
| LISA STEPHENS,<br>19 Occident Avenue<br>Staten Island, NY 10304<br><br>    *Plaintiff,*<br><br>v.<br><br>STEVEN MNUCHIN, Secretary,<br>Department of the Treasury,<br>1500 Pennsylvania Avenue, N.W.<br>Washington, D.C.  20220<br><br>    *Defendant.* | )<br>)<br>)<br>)<br>)<br>)<br>)  Civ. Action No. 1:17-cv-1252<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## COMPLAINT

Comes now, Plaintiff Lisa Stephens (hereafter "Plaintiff Stephens"), by and through counsel, files this Complaint against, Defendant Steven Mnuchin, Secretary, Department of the Treasury and for her Complaint states as follows.

This action seeks declaratory, injunctive, and equitable relief, and compensatory damages from Defendant for gender and racial discrimination and retaliation, under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq*.

### Jurisdiction and Venue

1. This Court has jurisdiction over the subject matter of this Complaint pursuant to 28 U.S.C. § 1331.

2. Plaintiff exhausted all administrative remedies.

3. Venue is proper in this court pursuant to 28 U.S.C. § 1391(b) in that all or some events or omissions giving rise to Plaintiff's claims occurred in this judicial district, and Defendant may be found in this judicial district.

1

**Parties**

4. Lisa Stephens is an African-American female, a citizen of the United States, a resident of New York, and a former employee of the Office of the Comptroller of the Currency ("OCC") at the Department of the Treasury.

5. Defendant Steven Mnuchin (hereinafter "Defendant" or the "Agency") is the Secretary of the Treasury at the Department of the Treasury. The Department of the Treasury is an agency of the United States government and an "employer" within the meaning of the statutes under which Plaintiff brings her claims. Defendant Mnuchin is being sued in his official capacity.

**Facts**

6. Plaintiff Lisa Stephens was hired by the OCC at the Department of the Treasury as the Shared National Credit ("SNC") Program Manager on July 1, 2012. Plaintiff Stephens was recruited by Michael L. Brosnan, Senior Deputy Comptroller, Large Bank Supervision, to apply for a position at the OCC that she previously held at the New York Federal Reserve Bank of New York. Plaintiff Stephens' first level supervisor at the OCC was Vance Price (Caucasian male), Deputy Comptroller, Large Bank Supervision.

7. After Plaintiff Stephens' began employment at OCC, Mr. Price informed her that she would be responsible for supervising two employees: Jamie Jo-Perry (Caucasian female), SNC Analyst, and Christal Coppedge (Caucasian female), SNC Data Administrator. Plaintiff Stephens' position description did not indicate that she was responsible for supervising employees, and Plaintiff Stephens had no experience with OCC's policies and protocols for supervising employees. Plaintiff Stephens requested that Mr. Price elaborate on her managerial duties and job expectations. However, Mr. Price ignored her requests and did not explain her managerial duties and responsibilities, delineate his expectation of her as a manager, or describe the processes and

procedures for managing two employees. Plaintiff Stephens did not have all the relevant OCC procedural documents nor did she receive timely training for managing two employees. Plaintiff Stephens also did not receive training or appropriate access on the OCC's intranet for performing her duties and managing the Shared National Credit database for the OCC.

8. The OCC's Policies and Procedures Manual (PPM) mandates that a supervisor provide a new employee with a performance plan and meet and discuss the performance plan with the new employee within thirty days of the employee's placement in the position. Mr. Price did not give Plaintiff Stephens a performance plan within the thirty-day required period. Plaintiff Stephens was asked to provide Mr. Price with her performance plan in November 2012, almost five months after the start of her employment. Mr. Price reassured Plaintiff Stephens that he would alert her if he had any concerns about her performance. Mr. Price did not provide Plaintiff Stephens an interim performance review or any negative feedback of Plaintiff Stephens' performance until June 5, 2013, one week before Plaintiff Stephens received a notice of termination.

9. Grant Wilson (Caucasian male) was the previous SNC Program Manager. Mr. Wilson advised that he was too busy to assist Plaintiff Stephens with the transition into the position. Plaintiff Stephens requested meetings with Mr. Price and Mr. Wilson to obtain information about her new position, including how to manage the SNC program, manage the SNC database, and secure additional staffing. However, Mr. Price and Mr. Wilson would not jointly meet with her to discuss these issues. Instead, they told her to ask her subordinate, Ms. Perry, for guidance on such protocols. Plaintiff Stephens requested the assistance of Ms. Perry; however, Mr. Perry ignored all of Plaintiff Stephens' questions concerning the SNC database, and Ms. Perry even refused to clarify her own duties, as a SNC Analyst.

10. Plaintiff Stephens was also unable to complete Part II of Manager Training until May 9, 2013, eleven months after the start of her employment and approximately one month before she received a negative Interim Review and notice of termination, despite having responsibility for the supervision of two subordinates and one of these subordinates had known conduct and performance issues.

11. At the start of Plaintiff Stephens' employment, Mr. Price told her that she would likely need to hire at least two in-house staff employees to assist in the administration of the OCC SNC database because it was understaffed. Within a month of Mr. Price's directive, Plaintiff Stephens attempted to start the process of hiring new employees. However, she encountered numerous roadblocks and delays, and Mr. Price ignored Plaintiff Stephens' requests for assistance. As a result of the Agency's failure to provide assistance and direction on the hiring process, the positions were not posted until February 2013 and were not filled until June 30, 2013, after Plaintiff Stephens' termination. To Plaintiff Stephens' knowledge, no other Caucasian or male manager under Mr. Price's supervision faced the same delays because Mr. Price would help expedite the process for the other managers.

12. Due to the understaffing of her office, Plaintiff Stephens was severely overworked and regularly worked eleven-hour days and even on weekends to ensure the completion of SNC Program deadlines.

13. After Plaintiff Stephens started employment with the Agency, she was forced to supervise an insubordinate and disgruntled Caucasian employee, Ms. Perry. Ms. Perry applied for and was not selected for the position awarded to Plaintiff Stephens and was angry that Plaintiff Stephens was selected for the position. Ms. Perry spoke to Plaintiff Stephens in a disrespectful and insubordinate manner, failed to keep Plaintiff Stephens apprised of her work, provided

incomplete answers to Plaintiff Stephens' questions or failed to submit responses at all, failed to complete assignments in a timely manner, failed to respond to emails in a timely manner, and questioned Plaintiff Stephens' actions and authority in front of other Agency employees and persons outside the Agency. Plaintiff Stephens attempted to obtain help from Mr. Price and the labor relations department, but they dismissed Plaintiff Stephens' concerns without investigation and told Plaintiff Stephens to give Ms. Perry more time to adjust as Ms. Perry applied, but was not selected for Plaintiff Stephens' position. The Agency's failure to address Ms. Perry's insubordination materially affected Plaintiff Stephens' ability to perform her job.

14. In July 2012, Kathryn Drumwright, the Director for Large Bank Supervision, informed Plaintiff Stephens that Ms. Perry had not submitted her time sheets. As Mr. Price failed to inform Plaintiff Stephens of her managerial duties, this was the first time Plaintiff Stephens learned that she was supposed to review her subordinates' time sheets. However, Plaintiff Stephens was not given any instruction on what was expected with regards to reviewing her subordinates' time sheets. Ms. Drumwright also informed Plaintiff Stephens that Ms. Perry had had time reporting issues in the past. Plaintiff Stephens immediately began to review her subordinates' time sheets and learned that Ms. Perry was misreporting her time and attendance and regularly reporting that she had worked more hours than she had actually worked.

15. Between July and December 2012, Plaintiff Stephens told Mr. Price that Ms. Perry provided an incorrect account of her time because she took more time off work than the time off reflected in the OCC attendance records. She asked him if she should approve Ms. Perry's leave requests when she believed that Ms. Perry was abusing the leave policy and Ms. Perry already exhausted her available leave. Mr. Price told Plaintiff Stephens not to approve Ms. Perry's leave

5

requests until after she had a proper accounting of how much leave Ms. Perry had left. Plaintiff Stephens followed Mr. Price's direction.

16. Instead of helping Plaintiff Stephens better manage Ms. Perry, Mr. Price undermined Plaintiff Stephens' authority. While Plaintiff Stephens had previously asked Ms. Perry to submit all leave requests directly to her, Ms. Perry started to circumvent Plaintiff Stephens and ask Mr. Price for leave. Mr. Price verbally approved Ms. Perry's request for time off but did not tell Plaintiff Stephens he had approved Ms. Perry's request. Chris Hays, a LBSIS Program Analyst and another employee in the office, stated that he observed Ms. Perry requesting and arranging leave with Mr. Price, rather than Plaintiff Stephens. As a result, Plaintiff Stephens marked Ms. Perry as absent, without leave, because she did not know Mr. Price had approved Ms. Perry's leave request.

17. Other OCC employees witnessed Ms. Perry's attitude and conduct towards Plaintiff Stephens. Chris Hays worked with Ms. Perry and Plaintiff Stephens on the SNC Program. Mr. Hays observed Ms. Perry's interactions with Plaintiff Stephens and believed that there was "an effort to undermine Plaintiff Stephens." He stated that when Plaintiff Stephens started at SNC, Ms. Perry told him: "We'll see how long she lasts." Mr. Hays recalled Ms. Perry's heated and terse comments in an August 15, 2012 meeting with another Agency employee. He described Plaintiff Stephens's demeanor as calm, but stated that Ms. Perry's behavior was unprofessional. Ms. Coppedge, another of Ms. Perry's colleagues on the SNC project, concurred that Ms. Perry treated Plaintiff Stephens disrespectfully and said that Ms. Perry acted as though Plaintiff Stephens was not qualified for her position.

18. Shortly after the start of Plaintiff Stephens' employment, she began reporting the harassment she was experiencing from Ms. Perry to Linda Medina, the Labor and Employee

6

Relations Specialist, and Mr. Price. In addition, Plaintiff Stephens listed her concerns to Mr. Price, including but not limited to the facts that she needed guidance on her managerial duties, she did not have the resources she needed to manage the SNC Program, she needed managerial training, she did not know who to turn to for help, she needed assistance in posting new positions because the job posting processes were repeatedly delayed, and her subordinate, Ms. Perry, was disrespectful in front of OCC and other Agency employees, refused to report to her, ignored her requests, bypassed Plaintiff Stephens concerning her leave requests, and was not doing her work, forcing Plaintiff Stephens to complete Ms. Perry's work. At a loss for how to address the continually deteriorating situation, Plaintiff Stephens suggested to Mr. Price that she was not sure if she wanted to continue to work, if she was going to be treated disrespectfully. Instead of addressing her concerns or providing her with additional support, Mr. Price responded, "Well, do what you have to do."

19. Beginning in August 2012, Plaintiff Stephens met regularly with Ms. Medina regarding Ms. Perry's performance and conduct problems. Plaintiff Stephens also reported that she was being subjected to unfair treatment and unreasonable expectations. Ms. Medina did not permit Plaintiff Stephens to write up Ms. Perry because she stated that the behavioral concerns Plaintiff Stephens described were not sufficient to support disciplinary action. Instead, Ms. Medina told Plaintiff Stephens to document Ms. Perry's poor performance and conduct. Plaintiff Stephens followed all Ms. Medina's directions for addressing Ms. Perry's conduct and performance issues. Plaintiff Stephens requested discipline of Ms. Perry for forwarding confidential bank data, including bank loan ratings, to her personal AOL account in November 2012, but Mr. Price instructed Plaintiff Stephens not to reprimand Ms. Perry. Plaintiff Stephens was not permitted to take any formal action against Ms. Perry until March 15, 2013.

20. From September 2012 through December 2012, Plaintiff Stephens spoke to Ms. Medina about possibly filing an EEO harassment complaint against Ms. Perry, and Ms. Medina told her she could not file an EEO complaint because she was a supervisor and an agent of the Agency. Plaintiff Stephens elaborated that she believed Ms. Perry was afforded much more leniency and protection, despite being abusive and having many performance and conduct issues.

21. On September 27, 2012, Plaintiff Stephens had a meeting with a representative of the Federal Reserve to discuss the Federal Reserve's expectations and timeline for the SNC project. Following the meeting, Plaintiff Stephens met with Ms. Perry, Mr. Hays, and Ms. Coppedge to discuss the status of the SNC Project in light of her conversation with the Federal Reserve representative. Plaintiff Stephens indicated that she was concerned with missing the Federal Reserve's deadlines in the SNC Project and indicated that they needed to do better because it was "an embarrassment." Ms. Perry interjected and told Plaintiff Stephens, "You (Plaintiff Stephens) are an embarrassment" in front of Ms. Coppedge and Mr. Hays. Next, Ms. Perry questioned Plaintiff Stephens' managerial decision to have a meeting with the Federal Reserve representative without Ms. Perry and aggressively accused Plaintiff Stephens of meeting with the representative behind her back. Plaintiff Stephens verbally counseled Ms. Perry for not informing Plaintiff Stephens of deadlines from the Federal Reserve. Ms. Perry claimed that she had sent Plaintiff Stephens an email with the timeline. Plaintiff Stephens asked Ms. Perry to print out the email proof, but Ms. Perry declined to do so. Ms. Perry mocked Plaintiff Stephens stating that: "Are you that arcane that you print out emails?" Ms. Perry became angry and stormed out of the meeting. Plaintiff Stephens called her name and told her not to walk out, but she ignored Plaintiff Stephens' direction.

22. Ms. Perry's co-worker, Ms. Coppedge, stated that Ms. Perry was attempting to "needle" Plaintiff Stephens on September 27, 2012 and that she had "never seen someone talk to their supervisor in that way." Mr. Hays also opined that Ms. Perry's response in the September 27, 2012 meeting was "terse and unprofessional."

23. Ms. Perry filed an EEO complaint against Plaintiff Stephens based on the September 27, 2012 incident, and her complaint was investigated and found to be meritless. The Agency, however, refused to accept Plaintiff Stephen's complaint about the conduct of Ms. Perry or investigate Plaintiff Stephen's complaint. After the Perry investigation, Plaintiff Stephens expressed her concerns with her continual management of Ms. Perry to Ms. Medina and Mr. Price and inquired about transferring Ms. Perry to another team instead. Mr. Price suggested that Ms. Perry could not be moved due to her known performance and conduct issues. Plaintiff Stephens then requested counseling and mediation to minimize and mend her supervisory relationship with Ms. Perry. Mr. Price promised to make the necessary arrangements for mediation but never followed through with his promise.

24. After the September 27, 2012 incident, Ms. Perry stopped performing a large portion of her duties entirely, and Ms. Coppedge and Plaintiff Stephens had to complete Ms. Perry's work. When Plaintiff Stephens reported Ms. Perry's failure to complete assignments, Mr. Price ignored her concerns. Indeed, Mr. Price undermined Plaintiff Stephens when he reassigned Ms. Perry's SNC program tasks that Plaintiff Stephens had previously removed from Ms. Perry.

25. In late 2012, Plaintiff Stephens requested permission to attend an offsite conference in California. Mr. Price denied her request, but Plaintiff Stephens later learned that Ms. Perry was approved to attend this conference and she attended the conference, even though Plaintiff Stephens was the new SNC Manager for the OCC and her counterparts, the Shared National Credit Program

Managers from the Federal Reserve and FDIC, attended the conference. Hence, Plaintiff Stephens was denied an opportunity to attend the conference with her colleagues from other federal agencies, but a Caucasian female employee, who was Plaintiff Stephens' subordinate, was permitted to represent the OCC at the conference. As a result, Plaintiff Stephens was blocked from receiving information that would have facilitated a stronger working relationship with her counterparts.

26. In November 2012, Ms. Perry verbally requested to use annual leave, but failed to submit a formal written request for leave. Plaintiff Stephens denied her request because of four reasons: 1) she believed Ms. Perry had exhausted all her leave; 2) Ms. Perry had time and attendance issues; 3) Ms. Perry was needed to participate in a conference call during the requested leave period; 4) and her failure to do her work was seriously jeopardizing the SNC Program. One day after Plaintiff Stephens denied her request for annual leave, Ms. Perry requested Family Medical Leave (FML) for the same time period.

27. OCC's Policies and Procedures Manual gives an employee's "supervisor" the discretion to require an employee to provide medical certification supporting a FML request, including the date the family member's health condition began, diagnosis, duration, and other such information. Ms. Perry's Collective Bargaining Agreement (CBA) also states that "when an employee is absent in excess of three consecutive workdays, the supervisor may require the employee to submit a medical certificate" and that an "employee must provide medical certification" in support of a FML request to care for a family member so the employer can "determine the amount of leave necessary to manage the circumstances." Nothing in the PPM or CBA requires a supervising employee to sign off on a FML request without having seen any supporting documentation.

28. Plaintiff Stephens reasonably believed that Ms. Perry's request for FML was not legitimate considering the timing of the request and her consistent leave abuse and false recording of her time. Plaintiff Stephens also believed it inappropriate and unethical for her to sign off on a suspect leave request without seeing any documentation supporting the request and reasonably interpreted the CBA and PPM to permit her to review medical documentation supporting Ms. Perry's FML request. Plaintiff Stephens discussed Ms. Perry's FML request with Suzanne Willard from HR and Mr. Price. She explained her reasons for denying Ms. Perry's FML request in an email to Ms. Willard, copying Mr. Price, and Mr. Price did not instruct Plaintiff Stephens to sign the FML request. While Ms. Willard indicated that Plaintiff Stephens should sign the FML request, she did not cite any language permitting an employee to bypass her supervisor in making such request and requiring a supervisor to approve a leave request when she had not reviewed any of the documentation supporting such a request.

29. On November 27, 2012, Mr. Price gave Plaintiff Stephens a draft performance plan for the upcoming 2013-performance year, but he did not discuss the plan with her. As Plaintiff Stephens had not received any managerial training or direction concerning her responsibilities to issue performance expectations to her subordinates, Plaintiff Stephens could only follow her supervisor's example. Accordingly, when she received a draft performance plan from Mr. Price, she prepared a draft performance plan for her subordinates. Plaintiff Stephens emailed Ms. Perry a copy of her 2013 Performance Plan on November 30, 2012.

30. Ms. Allred and Mr. Wilson told Plaintiff Stephens that she could not give 2012 performance evaluations because she had only been at the agency for six months and had not spent sufficient time at the Agency to review Ms. Perry and Ms. Coppedge. Thus, Plaintiff Stephens' predecessor, Mr. Wilson, prepared evaluations for Ms. Perry and Ms. Coppedge. Plaintiff

Stephens concurred with Mr. Wilson's evaluation of Ms. Coppedge, but gave a supplemental review of Ms. Perry's performance to Mr. Wilson to include in the evaluation. Plaintiff Stephens believed Mr. Wilson would finalize the 2012 performance evaluations of Ms. Perry and Ms. Coppedge and either issue them, or pass them on to Mr. Price who would issue them prior to the December 31, 2012 deadline.

31. On January 24, 2013, Mr. Price asked Plaintiff Stephens if she had given performance evaluations to Ms. Perry and Ms. Coppedge. She replied that she had not because Ms. Allred and Mr. Wilson told her she could not complete the evaluation, but she had provided her feedback on her subordinates' performance to Mr. Wilson for inclusion in the evaluations. She told Mr. Price that she believed Mr. Wilson was supposed to discuss the evaluations with Ms. Perry and Ms. Coppedge. Once again, Plaintiff Stephens entreated Mr. Price to clarify what her managerial duties were, but he ignored her request.

32. In early 2013, Plaintiff Stephens needed additional staff resources for the annual SNC credit review, but she was unfamiliar with the procedure to obtain additional resources. Plaintiff Stephens requested Mr. Price's assistance, but he treated her requests as unnecessary burdens. He delayed her request until March 2013, when he belatedly assigned Tom Guenther to assist the SNC team. In contrast, Mr. Price's other Caucasian and/or male direct reports promptly received additional resources whenever they requested his assistance.

33. On or around June 4, 2013, Mr. Price gave Plaintiff Stephens a written interim performance review, which criticized her performance regarding her alleged failure to take timely action on leave requests, to ensure consistent expectations for team members, and to provide constructive, timely feedback, including annual performance evaluations and interim discussions. Plaintiff Stephens was shocked to receive this review because the criticism was false because

Plaintiff Stephens had taken timely action on leave requests, applied consistent expectations for team members, and provided constructive, timely feedback, including annual performance evaluations and interim discussions.  Further, before this review, Mr. Price had never informed her that he was in any way dissatisfied with her performance or that her work performance was not up to standards, even though he told her at the start of her employment that he would promptly inform her if he was dissatisfied with her work.  Moreover, Plaintiff Stephens had not received any written feedback on her work and had not received a performance plan within thirty days of the start of her employment, as required by the PPM.

34.     Eight days later, on June 12, 2013, Mr. Price issued Plaintiff Stephens a notice of termination, effective June 29, 2013.  The notice recited the same criticisms of Plaintiff Stephens' performance that were in the June 4, 2013 interim performance review, but also asserted that Plaintiff Stephens' had communication challenges, communicated in an unprofessional manner, and failed to submit her personal time sheets in a timely manner.  The additional allegations were false because Plaintiff Stephens always communicated in a professional manner and submitted her personal time sheets in a timely manner, in the same manner as other employees at the Agency. Mr. Price did not give Plaintiff Stephens an opportunity to correct her alleged performance deficiencies.

35.     Plaintiff Stephens responded to the June 12, 2013 termination letter on June 25, 2013 and resigned from employment in lieu of termination on June 28, 2013.

## COUNT I

**Violation of Title VII of the Civil Rights Act of 1964, as amended,
42 U.S.C. Sec.  2000e *et seq.*
Disparate Treatment Discrimination based on Race and Gender**

36. Plaintiff Stephens incorporates by reference paragraphs 1 through 35 as if fully stated herein.

37. Title VII of the Civil Rights Act of 1964 states it is an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to her compensation, term, conditions, or privileges of employment, because of such individual's color, religion, sex, age, national origin, or to limit, segregate, or classify employees or applicants for employment opportunities or otherwise adversely affect an individual's status as an employee because of the individual's race, color, religion, sex, age, or national origin.

38. At all pertinent times, the Defendant was an employer subject to provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section 2000e.

39. At all pertinent times, Plaintiff Stephens was an employee entitled to protection under Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section 2000e.

40. Defendant, through its agents, discriminated against Plaintiff Stephens based on her race and gender by requiring Plaintiff to perform supervisory duties outside of her position description after she was hired and without any training provided to other managers, requiring her to perform the work of an insubordinate and disgruntled Caucasian employee who refused to perform her job, failing to provide her with resources and assistance provided to other managers, denying her conference attendance offered to other employees, denying her timely feedback offered to other employees, undermining her attempts to manage Ms. Perry, giving her a negative and false interim review without prior warning, and terminating her. To Plaintiff's knowledge no other employees, including those not in a protected class, were subjected to the same treatment.

41. Defendant had no legitimate business reason for any of such acts.

## COUNT II

### Violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. Sec. 2000e *et seq.* Hostile Work Environment

42. Plaintiff Stephens incorporates by reference paragraphs 1 through 41 as if fully stated herein.

43. Title VII of the Civil Rights Act of 1964 states it is an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to her compensation, term, conditions, or privileges of employment because of such individual's color, religion, sex, age, or national origin, or to limit, segregate, or classify employees or applicants for employment opportunities or otherwise adversely affect an individual's status as an employee because of the individual's race, color, religion, sex, age, or national origin. Title VII of the Civil Rights Act of 1964 also states it is an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise to retaliate against any individual with respect to her compensation, term, conditions, or privileges of employment in response to the individual's protected activity.

44. A hostile work environment is a form of prohibited employment discrimination where the employee is subjected to a work environment permeated with ridicule and humiliation and/or subjected to adverse action that substantially alters the work environment because of that employee's race, national origin, and/or age, and/or because the employee complained of discriminatory treatment.

45. At all pertinent times, the Defendant was an employer subject to provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section 2000e.

46. At all pertinent times, Plaintiff Stephens was an employee entitled to protection under Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section 2000e.

47. Defendant, through its agents, subjected Plaintiff Stephens to a hostile work environment based on her race and sex and in retaliation for engaging in protected activities by requiring Plaintiff to perform supervisory duties outside of her position description after she was hired and without any training provided to other managers, requiring her to perform the work of an insubordinate and disgruntled Caucasian employee who refused to perform her job, failing to provide her with resources and assistance provided to other managers, denying her conference attendance offered to other employees, denying her timely feedback offered to other employees, undermining her attempts to manage Ms. Perry, giving her a negative and false interim review without prior warning, and terminating her. To Plaintiff's knowledge no other employees, including those not in a protected class, were subjected to the same treatment.

48. Defendant had no legitimate business reason for any of such acts.

### COUNT III

**Violation of Title VII of the Civil Rights Act of 1964, as amended,
42 U.S.C. Sec. 2000e *et seq.*
Retaliation**

49. Plaintiff Stephens incorporates by reference paragraphs 1 through 48 as if fully stated herein.

50. Title VII of the Civil Rights Act of 1964 states it is an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise

to retaliate against any individual with respect to her compensation, term, conditions, or privileges of employment in response to the individual's protected activity.

51.     At all pertinent times, the Defendant was an employer subject to provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section 2000e.

52.     At all pertinent times, Plaintiff Stephens was an employee entitled to protection under Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section 2000e.

53.     Plaintiff Stephens attempted to file an EEO complaint alleging discrimination and hostile work environment in 2012, but Ms. Medina instructed Plaintiff Stephens that she was not allowed to file such a complaint due to her status as a manager. Both Ms. Medina and Mr. Price knew that Plaintiff Stephens complained of discrimination and a hostile work environment due to her interactions with Mr. Price and Ms. Perry. Defendant, through its agents, retaliated against Plaintiff Stephens for her complaints of discrimination by requiring her to manage an insubordinate and disgruntled employee who would not recognize Mr. Stephens as her manager, requiring Plaintiff Stephens to perform the work of Ms. Perry who refused to perform her duties, failing to provide Plaintiff Stephens with resources and assistance provided to other managers, denying her conference attendance, undermining her attempts to manage Ms. Perry, giving her a negative and false interim review without prior warning, and constructively terminating her. To Plaintiff's knowledge no other employees, including those not in a protected class, was subjected to the same treatment.

54.     Defendant had no legitimate business reason for any of such acts.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Stephens prays as follows:

A. That this Court issue a declaratory judgment that Defendant violated Plaintiff's rights under Title VII of the Civil Rights Act of 1964, and declare Plaintiff eligible to receive equitable and other relief;

B. Issue a permanent injunction prohibiting Defendant from engaging in any discriminatory and retaliatory actions;

C. Enter judgment in favor of Plaintiff against Defendant for all equitable monetary damages available under the law, including but not limited to back pay and front pay in amounts to be determined at trial;

D. Order Defendant to pay compensatory damages in an amount to be determined at trial;

E. Order Defendant to pay Plaintiff's reasonable attorneys' fees, expert fees, and costs; and

F. Order any other relief this Court deems appropriate.

Respectfully submitted,

_____*/s/*_____
David A. Branch #438764
Law Office of David A. Branch & Associates, PLLC
1828 L Street NW, Suite 820
Washington, DC 20036
(202) 785-2805 phone
(202) 785-0289 fax
davidbranch@dbranchlaw.com

**JURY DEMAND**

Plaintiff demands a jury trial on all counts.