# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LISA STEPHENS,<br><br>      *Plaintiff*,<br><br>v.<br><br>STEVEN MNUCHIN, Secretary, U.S. Department of the Treasury,<br><br>      *Defendant*. | Civil Action No. 17-1252 (DLF) |

## MEMORANDUM OPINION

Lisa Stephens brings this Title VII action against her former employer, the U.S. Department of the Treasury, asserting that it discriminated against her based on race and gender, subjected her to a hostile work environment, and retaliated against her for engaging in protected activity. Before the Court is Treasury Secretary Steven Mnuchin's Partial Motion to Dismiss. Dkt. 9. For the reasons that follow, the Court will grant the motion.

## I. BACKGROUND

The Office of the Comptroller of the Currency, a bureau within the Treasury Department, hired Stephens as a Bank Examiner and Shared National Credit Program Manager on July 1, 2012. Compl ¶ 6; Dkt. 9-1 at 5. Stephens worked for the Treasury Department for nearly one year. Compl. ¶ 35. During that time, Stephens' supervisor was Vance Price, the Deputy Comptroller for Large Bank Supervision. *Id.* ¶ 7. According to the complaint, Price did not adequately explain Stephens' managerial duties, and he did not provide Stephens with necessary training, documents, performance plans, assistance, and feedback. *Id.* ¶¶ 7–11, 25, 29, 32. Also, Stephens "was forced to supervise" Jamie-Jo Perry, "an insubordinate and disgruntled

employee." *Id.* ¶¶ 7, 13, 21–22. The Treasury Department failed to address the insubordination, *id.* ¶ 13, and Price undermined Stephens' authority over Perry when, for example, he granted Perry's leave request without consulting Stephens and when he reassigned tasks to Perry that Stephens had previously removed from Perry, *id.* ¶¶ 16, 24.

On June 5, 2013, Stephens received a negative performance review, *id.* ¶ 33, and on June 12—shortly before her one-year probationary period ended—Stephens received a notice of termination, *id.* ¶ 34. Stephens then resigned in lieu of termination on June 28, the day before her termination would have taken effect. *Id.* ¶¶ 34–35. On July 16, Stephens initiated contact with an Equal Employment Opportunity (EEO) Counselor. The Counselor ultimately issued a Report of Counseling. Dkt. 9-1; *see also* Compl. ¶ 2. On August 26, 2013, Stephens submitted an individual complaint to the Treasury Department. Dkt. 9-2; *see also* Compl. ¶ 2. After the Treasury Department completed an investigation, Stephens opted for a hearing before an administrative judge of the Equal Employment Opportunity Commission (EEOC). The administrative judge conducted an initial teleconference that discussed the nature of Stephens' claims, then issued an order identifying the issues to be adjudicated and setting a schedule for discovery and dispositive motions. *See* Dkt. 9-4. After discovery was completed and after the Treasury Department's motion for a decision had been pending before the administrative judge for approximately one year, Stephens withdrew her individual complaint. *See* Dkt. 9-5.

Stephens then filed this case, asserting three claims under Title VII of the Civil Rights Act: disparate-treatment discrimination based on race and gender, hostile work environment, and retaliation. Compl. ¶¶ 36–54. The Treasury Department answered the complaint, *see* Dkt. 4, but in the parties' ensuing meet and confer statement, the Department stated that it "intend[ed] to file a dispositive motion on [Stephens'] failure to exhaust administrative remedies as to at least one

of her claims." Dkt. 6 at 2. Because exhaustion is a question that can be resolved on the pleadings and the administrative record, the Court permitted the Treasury Department to file a dispositive motion as to exhaustion of administrative remedies. Dkt. 7 at 2; Dkt. 8 at 1. But because the motion would not dispose of the entire case, the Court also permitted initial discovery to begin while specifying that further discovery was stayed pending resolution of the exhaustion motion. Dkt. 7 at 2; Dkt. 8 at 1–2.

## II. LEGAL STANDARD

A motion to dismiss Title VII claims for failure to exhaust administrative remedies is properly analyzed under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Jones v. Bush*, 160 F. Supp. 3d 325, 337 (D.D.C. 2016), *aff'd*, No. 16-5103, 2017 WL 2332595 (D.C. Cir. Feb. 21, 2017); *Mount v. Johnson*, 36 F. Supp. 3d 74, 80 (D.D.C. 2014). Rule 12(b)(6) allows a defendant to move to dismiss the complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion, a complaint must contain factual matter sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A facially plausible claim is one that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This standard does not amount to a specific probability requirement, but it does require "more than a sheer possibility that a defendant has acted unlawfully." *Id.* A complaint need not contain "detailed factual allegations," but alleging facts that are "merely consistent with a defendant's liability . . . stops short of the line between possibility and plausibility." *Id.* (internal quotation marks omitted).

When deciding a Rule 12(b)(6) motion, the court may consider only the complaint itself, documents attached to the complaint, documents incorporated by reference in the complaint, and

judicially noticeable materials. *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997). Relevant here, the Court may consider Stephens' EEO documents. *See Bowden v. United States*, 106 F.3d 433, 437 (D.C. Cir. 1997) (considering "the pleadings and undisputed documents in the record" while reaching the merits on a motion to dismiss); *Vasser v. McDonald*, 228 F. Supp. 3d 1, 11 (D.D.C. 2016) (taking judicial notice of informal and formal administrative complaints on a motion to dismiss); *Williams v. Chu*, 641 F. Supp. 2d 31, 35 (D.D.C. 2009) ("A plaintiff's EEOC charge and the agency's determination are both public records, of which this Court may take judicial notice." (quotation marks and alteration omitted)). Finally, Rule 12(b)(6) dismissal for failure to state a claim "is a resolution on the merits and is ordinarily prejudicial." *Okusami v. Psychiatric Inst. of Wash., Inc.*, 959 F.2d 1062, 1066 (D.C. Cir. 1992).

## III. ANALYSIS

"Title VII complainants must timely exhaust their administrative remedies before bringing their claims to court." *Payne v. Salazar*, 619 F.3d 56, 65 (D.C. Cir. 2010) (internal quotation marks and alterations omitted); *see also* 42 U.S.C. § 2000e-16(c). The exhaustion requirement "serves the important purposes of giving the charged party notice of the claim and narrowing the issues for prompt adjudication and decision," *Park v. Howard Univ.*, 71 F.3d 904, 907 (D.C. Cir. 1995) (internal quotation marks and alteration omitted), and it "ensure[s] that the federal courts are burdened only when reasonably necessary," *Brown v. Marsh*, 777 F.2d 8, 14 (D.C. Cir. 1985). In the Title VII context, failure to exhaust is an affirmative defense, and thus "the defendant bears the burden of pleading and proving it." *Bowden v. United States*, 106 F.3d 433, 437 (D.C. Cir. 1997); *see also Smith-Haynie v. District of Columbia*, 155 F.3d 575, 578

(D.C. Cir. 1998) ("[A]n affirmative defense may be raised by pre-answer motion under Rule 12(b) when the facts that give rise to the defense are clear from the face of the complaint.").

Pursuant to Title VII, the EEOC has promulgated detailed procedures for the administrative resolution of employment discrimination claims against federal agencies. *See* 42 U.S.C. § 2000e-16(b); 29 C.F.R. § 1614.105. The relevant procedures are as follows:

> [E]mployees who believe they have been discriminated against must first consult an Equal Employment Opportunity (EEO) Counselor within 45 days of the alleged discriminatory acts. 29 C.F.R. § 1614.105(a)(1). Should the employee and the Counselor fail to resolve the discrimination claim within 30 days, the Counselor sends the employee a notice explaining the administrative complaint procedure. *Id.* § 1614.105(d). The employee then has 15 days to file an individual and/or class complaint with the employing agency. *Id.* § 1614.106 (regulations governing individual complaints); *id.* § 1614.204 (regulations governing class complaints); *see also id.* § 1614.103 (noting types of complaints governed by agency processing procedures outlined in regulations).

*In re James*, 444 F.3d 643, 644 (D.C. Cir. 2006); *accord Panarello v. Zinke*, 254 F. Supp. 3d 85, 96 (D.D.C. 2017).

For purposes of assessing whether a Title VII complainant exhausted these administrative procedures in a timely fashion, the Supreme Court has identified two categories of discrimination, both of which arise in this case. *See Achagzai v. Broad. Bd. of Governors*, 170 F. Supp. 3d 164, 175 (D.D.C. 2016). First, when the employee alleges that he or she was the victim of a "discrete retaliatory or discriminatory act," the timeliness inquiry focuses on that particular act. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 110 (2002); *Achagzai*, 170 F. Supp. 3d at 175. "[D]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." *Morgan*, 536 U.S. at 113. Second, when the employee alleges a hostile work environment, a different rule applies. In that context, because the "very nature" of the claim "involves repeated conduct," the unlawful employment practice "cannot be said to occur on any particular day." *Id.* at 115. Therefore, as long as "*an* act

5

contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for purposes of determining liability." *Id.* at 117 (emphasis added).

A. **Disparate-Treatment Discrimination and Retaliation**

Count I alleges disparate-treatment discrimination based on race and gender, and Count III alleges retaliation for engaging in protected EEO activity. *See* Compl. ¶¶ 36–41, 49–54. These are "discrete retaliatory or discriminatory acts" that are not actionable if time barred, even if they are related to acts alleged in timely filed charges. *See Morgan*, 536 U.S. at 113. Employees who believe they have been discriminated or retaliated against "must first consult" an EEO Counselor within forty-five days of the alleged discrete acts of discrimination or retaliation. 29 C.F.R. § 1614.105(a)(1). Stephens first contacted an EEO Counselor on July 16, 2013. Counting back forty-five days from that date, Stephens timely consulted the EEO Counselor regarding certain alleged discriminatory or retaliatory acts that occurred on or after June 1, 2013, namely Stephens' June 2013 negative performance review, notice of termination, and resignation in lieu of termination. *See* Compl. ¶¶ 33–35, 40; *see also* Def.'s Reply at 1, Dkt. 14 (acknowledging the same); Fed. R. Civ. P. 6(a)(1) (providing a default rule: when a statutory time period "is stated in days or a longer unit of time . . . exclude the day of the event that triggers the period").

But Stephens did not timely consult the EEO Counselor about alleged acts that occurred before June 2013, specifically that the Treasury Department discriminated or retaliated against her by providing insufficient training and assistance, failing to address Perry's insubordination, undermining Stephens' attempts to manage subordinates, and requiring her to perform duties outside her job description. *See* Compl. ¶¶ 40, 53; *see also id.* ¶¶ 6–32 (detailing events from

6

Stephens' hiring on July 1, 2012 to May 2013). Because Stephens failed to exhaust administrative remedies with respect to the alleged discriminatory and retaliatory acts that occurred before June 2013, Count I and Count III must be dismissed to the extent that they are based on those acts. *See Panarello*, 254 F. Supp. 3d at 100 (dismissing Title VII discrimination claims for failure to exhaust because the claims arose more than forty-five days before the complainant initiated contact with an EEO Counselor); *Achagzai*, 170 F. Supp. 3d at 178 (same).[1] Going forward in this case, Count I and Count III may only rely on discriminatory or retaliatory acts alleged to have occurred from June 1, 2013 to July 16, 2013.[2]

Furthermore, Count III can assert a retaliation claim premised only on protected EEO activity alleged to have occurred in February and March 2013, not on any other protected EEO activity. Before the Court, Stephens alleges that she engaged in earlier protected EEO activity in September through December 2012, when she spoke with a labor and employee relations specialist about possibly filing an EEO harassment complaint against Perry. Compl. ¶ 20; *see also id.* ¶ 53. Before the EEO Counselor and in her individual complaint submitted to the Treasury Department, however, Stephens did not raise this 2012 protected activity as a premise

---

[1] Because the Court decides the issue as described above, the Court does not address the Secretary's additional arguments for dismissing the same portions of Counts I and III, namely that (1) even if Stephens *could* have timely raised pre-June 2013 allegations with the EEO Counselor, she did not actually raise them; and (2) even if Stephens raised the allegations with the EEO Counselor, she failed to raise them in her individual complaint. *See, e.g.*, Def.'s Mot. at 13–16, Dkt. 9; Def.'s Reply at 1–4.

[2] The Secretary further argues that Stephens failed to exhaust administrative remedies for one action that occurred between June 1 and July 16, 2013—Stephens' negative performance review on June 5—because Stephens did not identify that action in her individual complaint. *See* Def.'s Mot. at 13–14. Although the individual complaint and the subsequent administrative investigation are far from a model of clarity, the individual complaint does mention the negative performance review in the general context of asserting race and sex discrimination. *See* Dkt. 9-2 at 2–3. Therefore, the Court is unpersuaded by the Secretary's argument.

for her retaliation claim in any way. Instead, Stephens identified her protected EEO activity as occurring exclusively in February and March 2013, when she expressed interest in filing her own EEO complaint against Perry because Perry filed one against her. *See* Individual Complaint, Dkt. 9-2 at 3 ("I was discriminated against based on . . . retaliation (complaining of discrimination during the investigation of a complaint by Jamie-Jo Perry against the OCC with me named as the primary management official in *February-March 2013*) . . . ." (emphasis added)); *see also* Report of EEO Counseling, Dkt. 9-1 at 2 (checking box for "retaliation/reprisal for prior protected EEO activity" based on "participation in the EEO complaint process as a Responsible Management Official named in a case filed by an OCC employee she supervised"); *id.* at 5 ("Ms. Stephens alleges reprisal for her participation in the EEO complaint process as an RMO and for expressing her interest in pursuing an EEO complaint. Ms. Stephens states that, during the processing of the complaint filed by Ms. Perry, she told Mr. Price that she wanted to file an EEO complaint herself."). As a result, Stephens exhausted administrative remedies for a retaliation claim premised on protected EEO activity that allegedly occurred in February and March 2013, but not premised on any other protected EEO activity. *See Marshall v. Fed. Express Corp.*, 130 F.3d 1095, 1098 (D.C. Cir. 1997) ("Allowing a complaint to encompass allegations outside the ambit of the predicate [administrative] charge would circumvent the [appropriate agency's] investigatory and conciliatory role, as well as deprive the charged party of notice of the charge, as surely as would an initial failure to file a timely [administrative] charge."). Count III may therefore rely only on incidents alleged to have occurred from June 1 to July 16, 2013 as retaliation for protected EEO activity in February and March 2013.

## B. Hostile Work Environment

Count II alleges that the Treasury Department subjected Stephens to a hostile work environment based on her race and gender and in retaliation for engaging in protected activities, *see* Compl. ¶¶ 42–48, a claim that ultimately requires Stephens to show "discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment," *Baird v. Gotbaum*, 662 F.3d 1246, 1250 (D.C. Cir. 2011) (internal quotation marks omitted). Again, the exhaustion rules for a hostile work environment claim differ from the exhaustion rules for discrete claims of discrimination or retaliation. According to *National Railroad Passenger Corp. v. Morgan*, "[h]ostile environment claims are different in kind from discrete acts" because "[t]heir very nature involves repeated conduct." 536 U.S. at 115. Such a claim "is composed of a series of separate acts that collectively constitute one 'unlawful employment practice.'" *Id.* at 117 (quoting 42 U.S.C. § 2000e-5(e)(1)). Therefore, "[p]rovided that *an* act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability." *Id.* (emphasis added).

"The *Morgan* principle is not, however, an open sesame to recovery for time-barred violations. Both incidents barred by the statute of limitations and ones not barred can qualify as 'part of the same actionable hostile environment claim' only if they are adequately linked into a coherent hostile environment claim—if, for example, they 'involve the same type of employment actions, occur relatively frequently, and are perpetrated by the same managers.'" *Baird*, 662 F.3d at 1251 (alterations omitted) (quoting *Morgan*, 536 U.S. at 120–21); *see also id.* (citing other circuits approvingly for the propositions that "acts before and after the limitations period that are *so similar in nature, frequency, and severity* must be considered to be part and parcel of the hostile work environment" and that *Morgan* requires inquiry into whether incidents

9

"occurring outside the statutory period are *sufficiently related* to those incidents occurring within the statutory period as to form one continuous hostile work environment" (quoting *Wilkie v. HHS*, 638 F.3d 944, 951 (8th Cir. 2011) and *Wheaton v. N. Oakland Med. Ctr.*, 130 F. App'x 773, 787 (6th Cir. 2005) (alterations omitted))); *Panarello*, 254 F. Supp. 3d at 101 ("The question whether such incidents are adequately linked into a coherent hostile environment claim . . . is not easily answered. We know, for example, that it is sufficient that the 'incidents involved the same type of employment actions, occurred relatively frequently, and were perpetrated by the same managers,' but 'neither the Supreme Court nor any circuit' has yet to offer a definitive test for what is necessary to establish that the incidents are 'sufficiently related' to form a 'coherent' claim." (quoting *Morgan*, 536 U.S. at 120–21 and *Baird*, 662 F.3d at 1251 (some internal quotation marks and alterations omitted))).

As discussed above, Stephens timely consulted the EEO Counselor regarding incidents that occurred between June 1 and July 16, 2013, specifically her June 2013 negative performance review, notice of termination, and resignation in lieu of termination, but Stephens did not timely consult the EEO Counselor regarding any pre-June 2013 incidents. *See supra* Section III.A. The pre-June 2013 incidents thus qualify as part of an actionable hostile work environment claim only if they are "adequately linked" to an incident that occurred between June 1 and July 16, 2013. *Baird*, 662 F.3d at 1251; *see Vickers v. Powell*, 493 F.3d 186, 198–99 (D.C. Cir. 2007) (applying the *Morgan* rule to the 45-day window for initiating counseling).

The incidents are not adequately linked. Although the same manager (Price) was involved in some of the incidents, the pre- and post-June 2013 incidents involved completely different types of employment actions, and they did not occur frequently or repeatedly. As Stephens herself states, before June 2013, she did not receive any other performance reviews.

Compl. ¶¶ 8, 33.  And the June 2013 performance review is not similar to any earlier incidents: it criticized Stephens' performance, *id.* ¶ 33, but it did not provide insufficient training and assistance, fail to address Perry's insubordination, undermine Stephens' attempts to manage subordinates, or require her to perform duties outside her job description, *see id.* ¶ 47; *see also id.* ¶¶ 6–32 (detailing events from Stephens' hiring on July 1, 2012 to May 2013).  Also, before June 2013, Stephens obviously did not receive a notice of termination from the agency, nor did she resign in lieu of termination.  Furthermore, those incidents *ended* Stephens' employment with the agency, so they do not share anything in common with earlier incidents that allegedly created an abusive working environment *during* Stephens' employment.  *See Baird*, 662 F.3d at 1250.  As a result, the pre- June 2013 incidents are not adequately linked to the June 2013 incidents such that they form a coherent hostile work environment claim.  Count II must be dismissed to the extent it is based on the pre-June 2013 incidents, for which Stephens did not timely consult an EEO Counselor.  *See Dudley v. WMATA*, 924 F. Supp. 2d 141, 164 (D.D.C. 2013); *Rattigan v. Gonzales*, 503 F.Supp.2d 56, 82 (D.D.C. 2007).  Going forward, Count II may only rely on incidents alleged to have occurred from June 1, 2013 to July 16, 2013.

## CONCLUSION

For the foregoing reasons, the Court grants Treasury Secretary Steven Mnuchin's Partial Motion to Dismiss.  Dkt. 9.  A separate order consistent with this decision accompanies this memorandum opinion.

DABNEY L. FRIEDRICH
United States District Judge

Date: July 17, 2018